IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAMIEN LEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  NO. 3:07-CV-418 |
| | ) |
| AARON'S SALES AND LEASING, | ) |
| and CIRCLE CITY RENTALS, LLC, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on: (1) Defendant's Motion to Dismiss for Lack of Prosecution and Motion for Summary Judgment, filed on September 8, 2008; (2) Motion to Strike Affidavits, filed by Defendants on December 9, 2009; and (3) Motion to Strike the State of Indiana Department of Workforce Development Unemployment Insurance Appeals Decision of Administrative Law Judge, filed by Defendants on December 9, 2009. For the reasons set forth below, the motions to strike are **DENIED AS MOOT** and the motion to dismiss or in the alternative motion for summary judgment is **DENIED WITH LEAVE TO REFILE** within 30 days of this order. Defendants are directed that, in addition to the shortcomings noted in this order, any additional summary judgment motion must comply with Local Rule 56.1 and also with this Court's Guidelines for Briefing Summary

Judgment Motions, which can be found at http://www.innd.uscourts.gov/lozano.shtml.

BACKGROUND

On August 10, 2007, Plaintiff, Damien Lee ("Lee"), filed a complaint in the Elkhart County Superior Court alleging racial discrimination and retaliation in violation of Sections 703 and 704 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000(e), as amended by the Civil Rights Act of 1991. Defendants then removed the case to this Court on September 6, 2007. In Defendants' instant motion to dismiss for failure to prosecute and motion for summary judgement, Defendants argue that all of Plaintiff's claims should be dismissed for his failure to seek any discovery from Defendants and in the alternative, that Plaintiff's claims fail on summary judgment. Additionally, Defendants, in their instant motion to strike, argue that multiple statements included in Plaintiff's affidavits should be stricken from the record. In a second motion to strike, Defendants argue that the opinion of the administrative law judge in a related unemployment compensation matter should be stricken.

The Plaintiff filed a response to the instant motion to dismiss for failure to prosecute and motion for summary judgment on November 21, 2008. Defendants filed a reply brief on December 9, 2008. Plaintiff did not file a response to the instant motions to

strike. Accordingly, this matter is fully briefed and ripe for adjudication.

DISCUSSION

Failure to Prosecute

Defendants argue that Lee's complaint should be dismissed for failure to prosecute. In support of this argument, Defendants note that Lee failed to conduct any discovery whatsoever. Although Lee concurs that no formal discovery was sought, Lee nonetheless contends that he can prove his case. Lee argues that he lacked the funds necessary to conduct the type of discovery he would have liked to have conducted. Lee's argument is unpersuasive, given that the statutory scheme of Title VII permits a prevailing plaintiff to be reimbursed for expenses. It may also prove unwise, whether the case proceeds past summary judgment or not. This Court is also unpersuaded by Defendants' suggestion that they have suffered "extreme prejudice" in defending this action. Accordingly, the instant motion to dismiss for failure to prosecute is **DENIED**, and this Court proceeds on the instant motion for summary judgment.

Summary Judgment

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil

Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406 (7th Cir. 2009).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome*

of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

Without providing too much detail regarding Plaintiff's specific claims at this stage, some background facts are necessary in order to proceed. The following facts are construed in the light most favorable to the Plaintiff, as they must be for purposes of the instant motion. Aaron's Sales and Leasing ("Aaron's") is a corporation that engages in renting or leasing a diverse range of products to the public. Lee began working for Aaron's on October 13, 2000, as a products technician. Plaintiff was promoted in June 2001 to Customer Accounts Manager ("CAM"), a position he held until he was terminated from Aaron's in October 2006. As a CAM, Lee's primary responsibility was to contact customers who were late on their payments to Aaron's. Lee received numerous raises over his

course of employment with Aaron's.

Lee had a variety of problems throughout his employment with Aaron's, but things worstened in October of 2006, when Lee was ultimately terminated. On October 14, 2006, a customer came to Aaron's to make a late payment, but the General Manager of the store, Bill Knaub ("Knaub"), refused to accept the customer's payment and left to retrieve the merchandise the customer was renting. During the time Knaub was outside of the store attempting to retrieve the merchandise, the customer called Aaron's and spoke with Lee. During this conversation, the customer threatened and cursed Lee because he was unhappy that the merchandise was being returned to Aaron's and his late payment was being refused. Ultimately, the merchandise was not recovered by Knaub and the problem was left unresolved on this day.

Two days later, on October 16, 2006, the same disgruntled customer called Aaron's demanding to speak to Lee. Lee told the employee who answered the phone that Knaub, the General Manager, would deal with the customer. Knaub did speak with the customer, but the customer hung up on Knaub, and Knaub then told Lee that if the customer called back, Lee should be the one to talk to him. Lee told Knaub that this was not right because Knaub was the store's General Manager, Knaub had been the one who escalated the situation by refusing payment and arguing with the customer's wife, and Lee feared what the customer would say after Lee had already

been threatened once by the customer. Lee also reminded Knaub that Knaub had said that he would handle this particular customer. Later that same day, Knaub said to Lee that if Lee was going to work for him, Lee had to do what Knaub told him to do. Following this, Knaub and Lee went back and forth in a heated discussion for roughly five minutes, which gave Lee a migraine. Lee told Knaub that he did not feel well and wanted to go home. This request was granted. Lee left the store, and returned approximately one hour later.

Plaintiff was called into Knaub's office later that day and given a counseling form to sign identifying the circumstance described above. Plaintiff refused to sign this form. Knaub stated that nothing was going to happen and Lee did not have to sign the counseling form because it was just going into Lee's file.

On Tuesday, October 17, 2006, Knaub overheard a conversation between DeSteven Brown and Lee regarding the Equal Employment Opportunity Commission ("EEOC"). Knaub told Lee that he should not be talking about the EEOC in front of other employees, and that Knaub would tell Jeff Furlin ("Furlin") and Doug Lamphier ("Lamphier") about Lee talking about the EEOC to other employees.

On October 20, 2006, Lamphier terminated Lee from his employment with Aaron's. At the time of Lee's termination, Lamphier stated that Lee was insubordinate for refusing to sign the write-up.

Lee filed a charge with the EEOC the same day he was fired, the text of which is set forth in full in the next section. (Defendants' Ex. H). The EEOC issued a right to sue letter and the current action ensued. Although not discussed here, Lee's EEOC charge and complaint are not limited to claims stemming from his termination; they include a wide range of alleged wrongdoing spanning throughout Lee's employment.

The Scope of Plaintiff's EEOC Charge

Plaintiff filed his charge of discrimination with the EEOC on October 20, 2006, and the charge alleges that the earliest date of discrimination was November 16, 2006[1] and that the latest date of discrimination was October 20, 2006. The charge also indicates that this is a continuing action, and that his allegations of discrimination are based on race and retaliation. The body of the charge reads, in its entirety, as follows:

> I have been employed by Circle City Rentals (d.b.a. Aaron's) since October of 2000. I most recently held the position of Accounts Manager. My immediate supervisor was Bill Knob [sic], Store Manager.
>
> During the course of my employment, I have been subjected to racial comments, denial of promotions, and unfair wages. At a Company party, Rich Carter called me his "Black Man." Mr. Carter has also made racial comments about Black and Hispanic customers. Mr. Carter also

---

[1] This is likely a typographical error, as at the time of filing this would have been a future date.

-8-

accused me and another African-American employee of stealing. I complained to Doug Lamphier, District Manager about being harassed but my concerns were ignored and no action was taken.

There were several employees that were promoted over me that had less job time and training. For instance, in September of 2005, Kathy Cacaras, Sales Floor Manager was given a General Manger's position at the Mishawaka Store. In November of 2005, I applied for a Sales Floor Manager position within the Company. Wayne Mason was hired off the streets and paid $13.00 per hour. Once Mason quit from his position, two African-American employees, one Hispanic female and I inquired about this position. The company gave this Sales Floor position to Sally Masker who had a suspended driver's license and could not physically perform all the job duties. In addition, I was being paid $11.75 per hour while other managers who are White were being paid $12.25 per hour.

In February of 2006, I had a meeting with Jeff Furlin, owner, Mr. Lamphier, and Mr. Carter to address my concerns. During this meeting, I complained about being denied a promotion and paid less than other Sales Managers. I also complained about being discriminated against because of my race and that Blacks had been the only ones who took the drug test. Management took no action.
In June of 2006, I applied for a General Manager position but I was not even interviewed for the position. On October 20th, 2006, I was terminated. I was told that I was being terminated for insubordination.

I believe that I have been discriminated against on the basis of my race, African-American, and retaliated against for complaining about being discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Defendants' Ex. H).

The complaint, a rambling recitation of 38 paragraphs not divided in any manner into separate claims, includes the following allegations. Without reference to any particular time period during his term of employment, or reference to any particular individuals, "Plaintiff was repeatedly verbally harassed by his managers and supervisors" on the basis of his racial identity. Paragraph 13 of the complaint notes that "Defendants' harassment of Plaintiff was motivated by and directed at Plaintiff's opposition to Defendants' unlawful employment practices" but, it is totally unclear from the complaint when Plaintiff opposed any unlawful employment practices, what form that opposition took, or even what specific unlawful employment practices Plaintiff opposed. Although this information may not be required to be included in the complaint, it would make deciphering Plaintiff's claims easier for this Court and Defendants. Paragraphs 15 through 18 of Plaintiff's complaint recite allegations relating to a claim of discriminatory drug testing, which allegedly had a disparate impact on racial minority groups. Specifically, Plaintiff alleges that "Defendant Aaron's Sales and Leasing only subjected African American employees, including Plaintiff, to drug testing." Paragraphs 19-21 of Plaintiff's complaint appear to return to the claim that Plaintiff was the victim of retaliatory harassment, in that it is noted that Plaintiff was accused by Defendants of "being a bad influence" on other minority employees when he opposed the unlawful

employment practices of Defendants, which allegedly had an adverse affect on his status as an employee. Paragraphs 22-25 of Plaintiff's complaint assert a claim of discriminatory compensation, claiming that Plaintiff's compensation "was kept at a level below his Caucasian subordinates and well below Caucasian employees who occupied positions in Defendants' employment structure parallel to Plaintiff's." Paragraphs 26-29 of Plaintiff's complaint do not allege any specific failure to promote claim, but do alleges that "Plaintiff's annual review scores were generated on a different scale than the scale for scores of Caucasian employees", that these scores are used to select candidates for promotion, and that his scores were altered "because he opposed the unlawful employment practices of the Defendant." Paragraphs 30-33 of Plaintiff's complaint allege that Plaintiff's termination was because of his race, or alternatively that it was because he opposed the unlawful employment practices of Defendants.

To say that this complaint is not well-crafted is an understatement. It nonetheless asserts a variety of legal claims that this Court must attempt to construe and address. This Court begins by considering which of these claims is within the scope of the EEOC charge.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that are not included in her EEOC charge ...." *Vela v. Village of Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000).

However, claims not explicitly included in the EEOC complaint can be pursued if they fall within the scope of the charges contained in the EEOC complaint. *Conley v. Village of Bedford Park,* 215 F.3d 703, 710 (7th Cir. 2000). The Seventh Circuit has noted that "[t]o determine whether the allegations in the complaint fall within the scope of the earlier EEOC charge, we must look at whether the allegations are 'like or reasonably related to' those contained in the charge." *Id.* (quoting *Harper v. Godfrey Co.,* 45 F.3d 143, 147-48 (7th Cir. 1995)).

The Defendants' position is that Plaintiff only identifies "the following incidents of alleged discrimination in his EEOC Charge: the 2000 incident and one 2001 incident." (Defendants' Brief in support of Motion to Dismiss for Lack of Prosecution and Motion for Summary Judgment at 14-15). Defendants then claim that "Because Mr. Lee only identified two incidents of alleged discrimination and retaliation in his EEOC Charge, he failed to exhaust his administrative remedies as to all other alleged incidents." (*Id.* at 15). Plaintiff's EEOC charge is less than artfully crafted, as is often the case since attorneys are rarely involved at this stage of the proceedings. Nonetheless, how any attorney can read the charge and see only two alleged instances of discrimination or retaliation is baffling. Furthermore, the Defendants' brief is so vague regarding what these alleged two incidents are, that this Court is not even sure what two incidents

the Defendants believe are included in the EEOC charge.[2]

With no assistance from the parties, this Court will consider each claim raised in the complaint, and whether those allegations are like or reasonably related to those contained in the charge. With regards to the claims of racial harassment and/or retaliatory harassment in Plaintiff's complaint, the EEOC charge makes reference to Plaintiff being "subjected to racial comments", gives several examples of such comments, and makes reference to Plaintiff's belief that he was being retaliated against for complaining about being discriminated against. Plaintiff's claims of racial harassment and/or retaliatory harassment are clearly like the claims raised in the EEOC complaint. Plaintiff's claims of discriminatory drug testing are also referenced in the EEOC charge. The charge contains the following language: "I also complained about being discriminated against because of my race and that

---

[2] Defendants, in their memorandum in support of their summary judgment motion, note that Lee has raised twenty-seven "racially-ugly" allegations in his interrogatories. Defendants do not set forth those allegations. Rather, they cite generally to exhibit G. They also attempt to group those allegations into the year of occurrence, setting forth the number of such allegations that stem from the years 2000 through 2006, but again cite only generally to exhibit G in support of these claims. Exhibit G is Plaintiff, Damien Lee's Supplemental Answers to Aaron's Sales and Leasing and Circle City Rentals, LLC's First Interrogatories to Plaintiff, and is 75 pages in length. It is not this Court's job to sift the record and make the parties arguments for them. *See U.S. v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991)("Judges are not like pigs, hunting for truffles buried in" the record.); *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999)("It is not the responsibility of this court to make arguments for the parties.").

Blacks had been the only ones who took the drug test." (Defendants' Ex. H at 2). Plaintiff's claims of discriminatory compensation were also raised in the EEOC charge. The charge reads, "I have been subjected to.... unfair wages." (Defendants' Ex. H at 1).

Claims regarding unfair reviews and denial of promotion relative thereto were also contained in, or at least can fairly be said to grow out of, the EEOC charge. The charge provides that "I have been subjected to ... denial of promotion." (Defendants' Ex. H at 1). It also includes specific examples of such denials. While explicit references to unfair reviews were not included, such can be expected to grow out of the EEOC investigation. Lastly, Plaintiff's claims of discriminatory discharge and/or retaliatory discharge are clearly included in the EEOC charge. Accordingly, this Court can not find that any claim raised in the complaint is outside the scope of the EEOC charge.

Timeliness of Plaintiff's Claims

Defendants argue that, even if this Court finds that Plaintiff's claims are within the scope of the EEOC charge, the claims should be dismissed as time-barred. Here, Defendants again fail to adequately support their position.

Generally, a plaintiff bringing a claim in Indiana pursuant to Title VII must file a charge of discrimination within 300 days of the alleged act of discrimination. *See* 42 U.S.C. § 2000e-5(e);

*Tinner v. United Insurance Co.*, 308 F.3d 697, 707 (7th Cir. 2002). Here, several of the alleged discriminatory actions occurred outside this period. However, in some circumstances, the continuing violation theory may apply to allow plaintiffs to recover for discriminatory acts that would otherwise be barred by the applicable statute of limitations. The continuing violation theory is an exception to the general rule that charges must be brought within the statutory period where "it would have been unreasonable to expect the plaintiff to sue" within the limitations period. *Id.* (citing *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 395 (7th Cir. 1999).

For Lee, this means that, absent a finding that the continuing violation theory applies here, his 300-day time period for his October 20, 2006, EEOC charge limits him to claims for incidents occurring on or after December 24, 2005.[3] Defendants, in their ever-so-helpful way, claim that "this leaves only three alleged incidents of discrimination that were not identified in Mr. Lee's EEOC Charge." (Defendants' Brief in Support of Motion to Dismiss for Failure to Prosecute or, in the Alternative, Motion for Summary Judgment at 16). Again, Defendants do not tell us what they believe those three remaining allegations are. They do provide a terribly unhelpful footnote that provides "See 2006 incidents" as

---

[3]Plaintiff's response brief indicates that 300 days stretches back into November 2005, but offers no support for this calculation.

if this Court could not determine that if things before December 24, 2005 are barred, then 2006 incidents are not barred. Defendants claim that these three *unidentified* incidents were not identified in the EEOC charge. Accordingly, Defendants' assert that the continuing violation theory simply cannot apply because Plaintiff failed to identify any timely incidents in his EEOC Charge.

Plaintiff's response brief is no more helpful than Defendants'. Plaintiff, in his response brief, notes that, "Additionally, in some instances, an unlawful act occurring outside the filing period may be linked with an act inside the period as a 'continuing violation.'" (Plaintiff's Response to Defendants' Motion to Dismiss for Failure to Prosecute or in the Alternative, Motion for Summary Judgment at 14). Plaintiff notes on the following page that "Damien Lee can argue that the continuing violation doctrine applies in this case because he did identify timely incidents, within the 300 days, in his EEOC Charge." (Id. at 15). Clearly, Lee can make that argument - unfortunately, he never got around to it in his response brief. This Court will not make the parties arguments for them. *Vaughn*, 167 F.3d at 354. However, even in the absence of a finding that the continuing violation theory applies, many more claims remain than Defendants suggest.

Plaintiff's Remaining Claims

The Defendants' motion for summary judgment addresses Plaintiff's claims as if there are only two claims: a claim for racial discrimination, and a claim for retaliation. In fact, Plaintiff has (or at least appears to have) several claims based on racial discrimination or harassment and perhaps several claims of retaliation. Among them are at least one but perhaps more than one claim for failure to promote; and claims of discriminatory termination, retaliatory termination, discriminatory use of drug testing (although it is not entirely clear that this claim is timely), racial harassment (based on at least several incidents occurring in 2006), and wage discrimination.

During the discovery process, Defendants had the opportunity to evoke from Plaintiff the precise nature of his claims. For example, Plaintiff could have been asked to set forth for Defendants each and every adverse action which he complains about. Similarly, Defendants could have asked Plaintiff to set forth each protected activity that he engaged in and each act of retaliation. Defendants, it seems, did not find that necessary. Yet, now, without isolating these critical components of the Plaintiff's claims, the Defendants seek summary judgment.

This Court cannot find that the Defendants have sustained their burden on summary judgment when the Defendants have not properly isolated the claims on which they are seeking summary

judgment. *Donnelly v. Chicago Park District*, 417 F.Supp.2d 992, 999 (N.D. Ill. 2006)(noting that the defendant ignored "the plaintiff's allegations and asserted facts, choosing instead to articulate and then defeat its own version of plaintiffs Title VII claim" and that "[t]he result is that a truly informed decision regarding whether there is a genuine issue of fact regarding plaintiff's Title VII cannot be made."). Without knowing which adverse action is being considered, this Court cannot determine whether the individual that Plaintiff alleges is similarly situated is indeed so situated. To demonstrate this Court's conundrum, James Tidwell ("Tidwell") alleges in his affidavit that he refused to sign an employee counseling form, and that he was not terminated for that refusal.[4] To the extent that the adverse action is Plaintiff's termination, it appears that Tidwell may very well be similarly situated, but if the alleged adverse action is drug testing or failure to promote, than Tidwell may not be similarly situated to Plaintiff. Likewise, in determining whether the stated reason for any given adverse action is a pretext, the Court must first know which adverse action is in question and what the alleged legitimate non-discriminatory reason is for that particular adverse employment action.

---

[4] Defendants dispute this fact, but since in summary judgment the facts must be construed in the light most favorable to the Plaintiff, that dispute is irrelevant for purposes of this motion.

> Underinclusive and inadequate presentation shift the responsibility to the court to do the lawyer's work. That's risky business, for it requires the judge to be clairvoyant or intuitively to know the contours of the unmade argument. And, it rests on the hope that the judge will explicate the arguments that the briefs have left undeveloped, rather than resorting to the rule that superficial, skeletal, and unsupported arguments will be deemed waived or forfeited. *United States v. Cusimano*, 148 F.3d 824, 828 n2 (7th Cir. 1998). The hope is, more often than not, vain, for judges are not like pigs hunting for truffles buried in the briefs. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). It is not their responsibility to research and construct the parties' arguments. *United States v. McLee*, 436 F.3d 751 (7th Cir. 2006).

*Donnelly*, 417 F.Supp.2d at 993-94.

In the end, this Court will not do the parties work for them. The Defendants' summary judgment motion fails to adequately establish that Defendants are entitled to summary judgment. However, as in *Donnelly*, although it would be permissibly to simply deny the motion for summary judgment, "enough questions appear to be implicated that it would not be institutionally responsible to take that course, which would necessitate a trial where perhaps there should be none." *Id.* at 994. Accordingly, this Court permits Defendants 30 days in which to re-file their summary judgment motion. Having determined that Defendants' summary judgment motion must fail, this Court finds that the pending motions to strike are moot.

CONCLUSION

For the reasons set forth above, the motions to strike are **DENIED AS MOOT** and the motion to dismiss or in the alternative motion for summary judgment is **DENIED WITH LEAVE TO REFILE** within 30 days of this order. Defendants are directed that, in addition to the shortcomings noted in this order, any additional summary judgment motion must comply with Local Rule 56.1 and also with this Court's Guidelines for Briefing Summary Judgment Motions, which can be found at http://www.innd.uscourts.gov/lozano.shtml.

**DATED: September 24, 2009**          **/s/RUDY LOZANO, Judge**
                                        **United States District Court**